Aloha. May it please the court, my name is Joe Moss. I represent Bill Apana, personal representative of the estate of Corina Apana. We're here today to try to ascertain what the highest court of the state of Hawaii would do with the pollution exclusion clause. That being said, since the highest court hasn't ruled, why wouldn't it be appropriate to certify this question to the Supreme Court? I would like that, Your Honor. I think that would be very appropriate to do, and the case has been decided. We have no limitations, problems, and I would be quite willing to do that, and I think it would be quite appropriate. On the other hand, it's only $90,000. I wish the diversity statute was higher, Your Honor, and Your Honor might also. Yeah, it's only $90,000, but it's... And that would delay the case for at least a year. Two years. They're two years behind, Your Honor. You don't think they put us to the head of the line? I don't know. They don't put me to the head of the line. So it's only about two more years. That's the backlog now in the Hawaii... So if we were to decide it's not a good idea to certify, I'm not saying we would, I'm just saying we know your position on certification, so we might as well get to the next point, and we were to decide, you know, let's just decide the case here and now. Why don't you give us your best argument as to why we should... There's clearly a split among the courts that have interpreted the clause, and is this pretty much the same clause in all of the contracts? I believe that it is, Your Honor, and I believe that Hawaii has had two cases since the district court made its decision, and the most important one was Del Monte, which was decided in December 2007, Del Monte versus Fireman's Fund, and Hawaii went further than almost any state in the country. New Jersey also, excuse me, Massachusetts also used this language where they said we'll honor the reasonable expectations of a policyholder, even though painstaking study of the policy would negate that. So there's only one other Massachusetts side of that statute, and New Jersey has also said we'll honor reasonable expectations even if the policy, you know, even if we have to... But that's really a very different argument, isn't it? It's not really an argument about what the clause means, it's really an argument about something else, about what the insured thought about. Yes, it's the reasonable expectations doctrine, and a lot of states have the reasonable expectations doctrine, but some of them have these things that we will only apply this if there's ambiguity in the policy, and then they have to do what seems to me to be sometimes intellectual gymnastics to find ambiguity in the policy, whereas the Hawaii Supreme Court just says, look, we're going to look at the reasonable expectations of the parties. That's been in the case law ever since Derry Road. Even with that, the plain language seems to be problematic for you, in my view. And that's why my heart soared when I read the Del Monte decision, because they said we will honor the reasonable expectations even though painstaking study of the policy would negate those expectations. So you're saying that under Hawaii law, we don't even need, if it could be plain, it doesn't have to be ambiguous before we get to that? Correct. That's what they say, and that's exactly what they say in Del Monte. And they said it to me, interestingly enough, it's a 5-0 decision in December 07, and they used that phrase twice in the decision, that we will honor reasonable expectations even though painstaking study of the policy would negate those. Judge Ezra disagrees with you. No, he does. Respectfully, sir, I do not believe that he does. He decided Allen... I didn't talk to him on the phone. I'm just reading, you know, I'm just deducing from reading Allen, which of course preceded Del Monte, so maybe he would... It preceded Del Monte, and what was kind of curious to me about that is he said, oh, Hawaii looks to California to decide things, and he decided that in 2004, and California decided McKinnon in 2003, and for some reason he didn't even talk about McKinnon. And in Allen, that was traditional environmental pollution, and that's square one. Everybody agrees traditional environmental pollution should be covered. But where would you draw the line? I think that's why we have judges. I think we have judges to draw the line, and they draw that based on reasonable expectation of the insured. Now, let's say... That's right, but if we have judges to decide what the reasonable expectations of the parties are, we may draw the line differently in every case depending on what the expectations of the parties were, right? That's not really a line. Well, I think the court can determine... That's ad hoc decision making. Well, I think the court would be able to say, this is what we believe is reasonable expectation for an insured, and a certain insured may say, I expect this, and you could go, well, you can expect it, but that's not reasonable. We will decide what is reasonable. You could, for example, in this case, if this insured had taken five drums of this stuff and put 250 gallons into a water supply, would any judge say, oh, it's reasonable, expect to be covered when you pour something into a river? But conversely, if you pour... and you... it turns out you had a leaky tank. That was actually one of the cases that held for me, and I believe that was American States versus Kiger in Indiana, and that's another problem that the court says, if you use this reporting as plain language, then the exclusions follows the coverage, and this is supposed to be a comprehensive general liability policy that will be liberally construed in favor of the insured. So your answer is... Indiana said it's covered. You think that's the right answer? Yeah, Indiana... no, Indiana said that the exclusion did not apply. But if you don't apply to that, what do you apply to? Well, I... you know, I'm not necessarily saying I agree with them, but I'm saying... Well, that's what I'm asking you. You say you have a case that says that, and I'm... I guess I'm pursuing the line question that one of my colleagues asked you about. I think both of my colleagues may have asked you about it. Here's what grew up in front of the line. If we sort of say, okay, we... I mean, interpreting language is, in a way, easy. You look at the language, and most people agree what the language is and all that, and we can usually get three judges to agree what the language means. But when you get past that to nebulous concepts like expectations of the insured, then you have to make judgments about who... what is the reasonable expectation of a reasonable person. So that's why I asked you about the leaky tank in a gas station, which, you know, is the kind of stuff that clearly gets you circular liability with no trouble at all. You and your brother and his cousin and everybody that's in any way connected with you becomes circular liable if you have a leaky tank in there. I mean, and that's what we consider to be environmental pollution. And yet we have a court, you say, that said, no, that's not... I think... That's not within exclusion. I think my point is we're trying to predict what Hawaii would do. And Hawaii, whether I may... whether I like it or not or whatever, but Hawaii has taken a position of interpretation that is quite favorable to the insured. And other states that have taken that same position favorably to the insured have not applied the exclusion. The Allen Court analyzed, and what that was, was that was this factory that was spewing dust out. And the Allen Court said, look, look to the Hawaii statute, best defined as pollution. Look, they got cited by the Hawaii state for being polluters. And it was traditional environmental pollution. And I think that's one thing courts can do. They can look at it and say, is this... have these people been cited? Is this a pollutant? Is this what a reasonable person, a reasonable person would consider to be pollution? And if it isn't, then it should be covered. The exclusion is very, very broad. And by doing this, they're shifting the risk. What they want us to do is for me to collect this $87,000 judgment from the plumber. And in similar cases, I mean, what am I supposed to tell... I'm on the board of United Way. We're going to be putting on an event. Am I supposed to tell them, look, if the drain clogs up, clear everybody away. Don't let them come back. If there's any fumes, you're not covered. It's a risk that an insured would expect to be covered. And I think that considering Hawaii's very favorable interpretation towards... I think Walmart is not involved because of workers' comp or something. Workers' comp. Walmart's paid. Yeah. Walmart's paid the workers' comp. Right. So they're protected. They're protected. They're totally protected. Yeah. They're protected. Thank you. Thank you, Your Honor. We'll hear from the opposing counsel. Good morning, Your Honors. May it please the Court. My name is Patrick Gallagher. I represent TIG Insurance Company. What we see this case about is simply the sanctity of contract. Is the contract going to be governed by the plain meaning of the words, or are we going to start to engage in rewriting contracts that are written simply because it's an insurance policy? Well, in California, they interpreted it, you know, in a way that the appellant would like to have it interpreted here. I guess my question with a plumber, what would a plumber be covered for? It would seem like practically everything a plumber does involves some noxious fumes. Well, they certainly are going to be. So why would you even buy the policy? They are certainly going to be involved more specifically in environmental hazards and pollution hazards. They can then purchase a policy that does not have this exclusion. They have to pay more for it, and they, as a matter of public policy, Your Honor, I would suggest should pay more for it if they are going to be involved in a business that puts the public at risk of chemical pollution issues. So the policy that he bought would cover if someone slipped and fell on the water on the floor? Correct. It was a standard commercial general liability policy. Why would that not be excluded as well? Water escapes, if somebody gets hurt, why is that covered by the exclusion? Under the definition, here we're talking about. Let's look at the definition. This is the definition of pollutant, right? Yes, Your Honor. So what page of the policy is it again? 77, ER 77, I believe. It's class 15, page 35 of the policy. I'm on the same page. Just a moment. ER 57777. Thank you. I'm sorry, I must be looking at, I'm looking at volume two. You have the policy somewhere? I'm generally familiar with the policy language, Your Honor, in terms of definition of pollutant. It says pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alcohol, chemicals and waste. Why wouldn't water on the floor be a liquid contaminant? If somebody slips and falls on it, why is that covered by the exclusion? If you look at the exclusion, which appears on page 88, I believe. Let's see. Here we go. It's on page 81. Pollution, bodily injury or property damage, which would not have occurred in holding parts for the actual alleged or sudden discharge, dispersal, seepage, migration, release or escape of pollutants at any time. So somebody slips and falls on some water. Why isn't that bodily injury or holding pollution? I don't think we would see that, Your Honor, as an irritant or contaminant. Why wouldn't it be a contaminant? Everything is a contaminant if it's in the wrong place. As one of the cases said, oil works perfectly fine in your tank case, but it's a contaminant if you put it in the water supply. Why isn't water that, or let's say it's not water. Let's say it is the stuff that goes through one of those big sewer pipes, you know, that has all the body waste and, you know, all the stuff that goes through the sewer pipes. And that, you know, he's a bad plumber and he breaks the pipe and the entire ground floor or the wall gets filled with the stuff that goes through the sewage. You would say that's a contaminant. I think most people would agree that's a contaminant. Yes, they would, Your Honor. And then somebody slips and falls on that, not covered, right? Because it's covered by a pollution exclusion. Yes, Your Honor. Wow. So what is it a plumber can do that he actually is covered for under your policy? Well, certainly, I mean, in terms of your what would be... Give me an example of something where he would be able to actually recover under your policy. Yeah, because you wouldn't want to buy a policy that had, there was nothing that could ever happen that would be covered. Certainly, certainly. Well, we love to pay insurance premiums, most of us, but usually we expect something back. Certainly. I mean, in terms of like a plumber, now, he's going to have slip and falls. He's going to have tools that are going to end up potentially injuring people. He is going to have situations where he does not connect pipes correctly, ends up with water flooding something, causing some property damage. Pollution, is it? I beg to differ, Your Honor. Water, I don't think we would consider an irritant, thermal irritant, or a contaminant type of thing. But if it's a sewer pipe, that would be a pollutant. That's correct, Your Honor. So if he installs a water conduit poorly and that causes a leak, he'd be covered for that. But if he makes exactly the same mistake in something, a pipe that carries something other than water, anything other than water, that would be a, that would not be covered. Well, if he is going to be involved in handling a pollutant, if he is going to be involved in potentially creating a contamination that's a pollutant that injures someone, I'm not complaining because I stepped in all the doo-doo. That's not my complaint. My complaint is I slipped on something wet on the floor and I broke my arm. Your Honor, I'm sure that from a gray area perspective, we probably would find that a situation where the duty to defend might well apply, and we might have to look at in terms of the duty to identify it. I think there's a misconception with you there, here, because we have courts all over the country going both ways, and you still here said you didn't have a duty to defend. In this particular case, Your Honor, I think that what we're talking about here is the plain meaning of the contract. Well, but when you have courts all over the country going different ways, how can it really be that plain that you don't have a duty to defend? Well, I think it's very clear in real life. A duty to defend is not the same as having to pay for it. That's correct, Your Honor. But in terms of the duty to defend, the issue here was that the district court felt that there was no law in Hawaii, and that based on the fact that there was no controlling law in Hawaii, that that created the mere possibility of coverage. There are some cases... Sounds like a pretty good argument. Well, but there are, Your Honor, some cases that suggest, and Hawaii cases, that the mere fact that there's no controlling case is not the measure of whether there was a potential for coverage. Except that Judge Callahan's point is you had courts all across the country that split very evenly on this question. Clearly, in some cases, in some courts, your client would be responsible here for the insurance, not just for the duty to defend. But in other courts, it might even be debatable whether you were covered. But the duty to defend seems like a pretty easy one. Even these other jurisdictions, Your Honor, the McKinnon case, for example, is being questioned by California itself. Do you have any cases in which an insurance company did not have to, did not have a duty to defend an action under this pollution exclusion clause? I'm sorry. You don't have a single case, even though we've litigated these cases all across the country, we don't have a single case in which an insurance company did not have a duty to defend its client in one of these cases. Well, Your Honor, let's look at the Galmanti case right here in Hawaii now, this recent case that was a pollution case. It was under earlier law before total pollution exclusion endorsements existed in policies. And the issue really at hand there was whether or not an assignment, and whether coverage was assignable to a successor insured, despite the presence of a no assignment clause, plain language, no assignment clause in the policy. What the Hawaii court did, and this is after sentencing, was it looked at this and it held that not only was there no duty to indemnify, but there also was no duty to defend because the plain language of the policy controlled. Under Hawaii law, that is what is the controlling feature. We don't have to get into a situation of is there or is there not a specific controlling case law on this specific legal issue. What do you think of Galmanti vs. Fireman's Fund where they say a language language? I'm sorry, Your Honor? With respect to Galmanti? Yeah, they said language, who cares about language? We look at expectations. Well, Your Honor, isn't that what they said? What they also said, Your Honor, with respect to... I take it that's a yes, but... Well, it is a yes, but, Your Honor, because they said a lot of things about reasonable expectations, but one of the things they said was that it's controlled by the language of the policy. If I could just have a moment. See, we'll be honored even though painstaking study of the policy provisions would have negated those expectations. But they also say, Your Honor, at page 745, that the reasonable expectations are derived from the insurance policy itself, which is subject to the general rules of contract construction. This involves construing the policy according to the entirety of its terms and conditions, and the terms themselves should be interpreted according to their plain, ordinary, and accepted sense in common speech, unless it appears from the policy that a different meaning was intended. So, in other words, under Hawaii law, unlike California law, we don't look to reasonable expectations except within the plain meaning of the policy, so that if there is some issues with respect to the plain meaning of the policy, then we will go to reasonable expectations. But here in Hawaii, and in this particular case, the plain meaning of the policy is a total pollution exclusion endorsement that's been supported by many other cases in other jurisdictions, and importantly, was held applicable in the Allen case. And from a standpoint of when we talk about duties to defend, and was there possibilities of coverage, the insurer, of course, is now sitting there with a Hawaii case, granted district court decision, interpreting Hawaii law, holding that, again, plain meaning applies under Hawaii law, and that because this plain meaning applies, the plain meaning of the policy is very clear that this falls within the pollution exclusion endorsement, both from a standpoint of indemnity and from a standpoint of defense. Why shouldn't we certify this, other than the fact that you just want to win right here? Well, Your Honor, delay certainly is an issue. The size of the case certainly is an issue. It's been briefed to death, of course, already to this point. And the Allen case is already there, Your Honor, from a standpoint of interpreting this particular total pollution exclusion endorsement, but more importantly, from a standpoint of the plain meaning of the contract, which is really what all this is about, Hawaii courts are clear. They enforce the plain language of the policy. And so I would suggest, Your Honor, that the Hawaii courts have already looked at contract interpretation, which is all that this is about, which is all that the opposition of the insured is all about, is interpretation of the contract. And Hawaii courts have already looked at that. And we have one district court who's, you know, looking at and interpreting what the Hawaii Supreme Court would do, has already seen likewise. That's the plain meaning of the contract. This is Allen. Yes, Your Honor. You know, you don't think that if he were to read Del Monte today, he would say, gee, maybe I'd come on a different way. Quite the opposite, Your Honor. I think given the fact. You should call and ask him. We're good friends, you know. I'm just kidding. He might tell you if you call him. I don't remember what I wrote in 2004. But I think that Del Monte. I think we have to take the judge at his word that with the witness he wrote on the page. But in any event, your bottom line answer to Judge Callahan's question is no certification in your view, right? We don't see a need for it, Your Honor. We see that Hawaii has already looked at contract interpretation, and so we're not in favor of it, no. OK. Thank you. We have a little time left for a bubble. I think most lawyers like to answer that question. If I'm going to win here, I don't want it certified. But we don't know what's going to happen here. I have no idea. It's interesting that they think there's no possibility that they could lose on the duty to defend in Hawaii, but yet they don't want to go there. And Hawaii has not looked at it. The highest court in the state of Hawaii, the Hawaii Supreme Court, has not looked at it. We're the ones, the plaintiffs, who should care if it takes extra time. We trust that the insurance company will still be in business in a couple of years from now. I just had an oral argument before the Hawaii Supreme Court on a $9,000 case, and I think it's the principle of the thing that affects every CGL policy in the state. Yes, no, no, I didn't mean to suggest that it wasn't worthwhile. I just worry about the parties and the lawyers and everybody. Well, if they don't want to take the case, they'll do that quickly, won't they? I would assume so. Yeah. But if the case amount is small, you know, you can sort of wear out the value of the award by... Yes, Your Honor. By delay, and so that's my concern. And as an aside, your question about water, I don't have the sites in front of me, but insurance companies have tried to use water as a pollutant in two cases, and they were shut down when they tried to do that. So there's no limit to what the insurance companies will try to do to make this exclusion clause to apply it. And it's going to... A vacuum pipe. Could be. I bet you that one they won't argue. It's a pipe that sucks in things. It's fine. And they're saying that Hawaii is limited to plain language is absolutely wrong. They're counting on... We have plenty of cases. Yes. Thank you, counsel. Thank you. Case is highly sensitive. We'll take a brief recess because the remaining two cases in the calendar will involve counsel appearing by video. So that needs to be set up. So it will be a short recess. Thank you.
judges: Kozinski, Bybee, Callahan